1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SQUAXIN ISLAND TRIBE, ISLAND
ENTERPRISES INC., SWINOMISH
INDIAN TRIBAL COMMUNITY, and
SWINOMISH DEVELOPMENT
AUTHORITY,

              Plaintiffs,

v.

FRED STEPHENS, Director, Washington
State Department of Licensing,

              Defendant.

No.  C03-3951Z

ORDER

Defendant Fred Stephens, represented by the State of Washington ("State"), moves for reconsideration of this Court's entry of judgment and permanent injunction barring the State from collecting the Washington State motor vehicle excise tax from Tribal retailers.  Docket no. 135.  Having reviewed the State's motion for reconsideration, the Court enters the following Order.

## BACKGROUND

On November 22, 2005, the Court entered an Order granting the Tribes' motion for summary judgment as to the legal incidence of the Washington State motor vehicle fuel tax. Docket no. 129.  The Court ruled that the legal incidence of the tax impermissibly fell on the

ORDER   1–

1  Tribes' retail fuel stations, relying on the multi-factor analysis described in <u>Oklahoma Tax</u>

2  <u>Commission v. Chickasaw Nation</u>, 515 U.S. 450 (1995), and <u>Coeur d'Alene Tribe of Idaho</u>

3  <u>v. Hammond</u>, 384 F.3d 674 (9th Cir. 2004).  <u>Id.</u> at 7-18.  Because the Court ruled in favor of

4  the Tribes as to their legal incidence claim, the Tribes' preemption and tribal sovereignty

5  claims were rendered moot.  <u>Id.</u> at 18 n.8.

6      On December 6, 2005, the United States Supreme Court issued its decision in

7  <u>Wagnon v. Prairie Band Potawatomi Nation</u>, 126 S. Ct. 676 (2005).  On December 9, 2005,

8  the Tribes filed their proposed judgment and permanent injunction.  Docket no. 130.  The

9  State filed its response and objections to the proposed judgment on December 16, 2005.

10 Docket no. 131.  In paragraph 9 of the response and objections, the State requested the

11 following:

12      The State calls the court's attention to the decision in <u>Wagnon v. Prairie Band</u>
        <u>Potawatomi Nation</u>, issued by the United States Supreme Court on December 6,
13      2005.  Among other points, the Court found that the availability of statutory tax
        deductions for some parties was not relevant to the determination of who bore the
14      legal incidence of Kansas' gas tax.  Rather, the Court relied on the location of the
        "taxable event" and the parties to the transaction on which the tax was imposed.
15      The State requests that the court direct the parties to file additional briefing on the
        impact of the <u>Potawatomi</u> decision on this case.
16

17 Docket no. 131, at p. 3.  In entering the proposed judgment on January 4, 2006, the Court

18 declined to request further briefing regarding the <u>Prairie Band</u> decision.  Docket no. 134.

19      On January 13, 2006, the State moved for reconsideration of the judgment and

20 injunction and requested a stay of the judgment and injunction pending the resolution of the

21 motion for reconsideration.  Docket no. 135.

22 **DISCUSSION**

23      I.      <u>Timeliness of the State's Motion for Reconsideration</u>

24      A motion for reconsideration "shall be filed within ten judicial days following the

25 order to which it relates."  LR 7(h)(2).  Further, the motion "shall point out with specificity

26 the matters which the movant believes were overlooked or misapprehended by the court, any

1   new matters being brought to the court's attention for the first time, and the particular

2   modifications being sought in the court's prior ruling." Id.  Pursuant to FED. R. CIV. P. 59(e),

3   "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of

4   the judgment."

5          The State's motion for reconsideration is ostensibly a request for this Court to

6   reconsider the entry of judgment.  However, the issues raised by the State are uniformly

7   directed at the Court's analysis of the legal incidence claim in the November 22 Order.  The

8   State does not argue that any specific aspect of the judgment entered by the Court requires

9   amendment.  To the extent the State raised the Prairie Band case in its response to the

10  proposed judgment and requested additional briefing, that request was itself a motion for the

11  Court to reconsider its November 22 Order, not an objection to the Tribes' proposed

12  judgment.  The tenth judicial day after November 22, 2005, was December 8, 2005 (two

13  days after the United States Supreme Court issued the Prairie Band decision).  The State did

14  not move to reconsider the November 22 Order within 10 judicial days.  Accordingly, the

15  State's present motion to have the Court reconsider its entry of judgment and its November

16  22 Order is untimely, as was the State's request for additional briefing on December 16,

17  2005.  The State's motion is DENIED as untimely pursuant to LR 7(h).  However, because

18  the State moved within 10 days of the entry of the judgment, the Court will also the address

19  the merits of the State's motion.

20          II.     Merits of State's Motion for Reconsideration

21          Motions for reconsideration are disfavored and will ordinarily be denied in the

22  absence of a showing of manifest error in the prior ruling or a showing of new facts or legal

23  authority which could not have been brought to its attention earlier with reasonable

24  diligence.  LR 7(h)(1).  The State contends that the Supreme Court's analysis in Prairie Band

25  places the legal incidence of Washington State's motor vehicle fuel tax on non-tribal entities,

26  although the State does not specify which entities (suppliers or distributors) actually bear the

ORDER  3–

1    legal incidence.[1]  The State first argues that Washington State's fuel taxation scheme is

2    analogous to that of Kansas, for which the Supreme Court determined that the legal

3    incidence falls on distributors.  The State contends that, like Kansas, Washington State

4    places the "taxable event" off-reservation and that the Supreme Court rejected the

5    availability of refunds as a factor in the legal incidence analysis in Prairie Band.  The State

6    also argues that Washington State does not require distributors to pass the fuel tax on to

7    retailers.  Finally, the State contends that retailers are regulated more heavily in Washington

8    State than in Kansas, although the State does not explain how this alters the legal incidence

9    analysis.

10                         A.  The Supreme Court's "Taxable Event" Analysis

11           The State fundamentally misapprehends the Supreme Court's analysis in Prairie Band,

12   confusing the legal incidence analysis with the preemption issue that was central to the

13   Supreme Court's opinion.  In Kansas, distributors are at the top of the distribution chain

14   (analogous to suppliers in Washington State) and the Kansas statutory scheme requires

15   distributors to remit the tax to the State.  Prairie Band, 126 S. Ct. at 680 (citing Kan. Stat.

16   Ann. § 79-3408).  The Supreme Court "granted certiorari to determine whether Kansas may

17   tax a non-Indian distributor's *off-reservation* receipt of fuel without being subject to the

18   [White Mountain Apache Tribe v. Bracker, 448 U.S. 136 (1980)] interest-balancing test."

19   Id. at 681 (emphasis in original).  The central issue presented to the Supreme Court was

20   whether a tribe's preemption claim can proceed if the taxable event occurs off that tribe's

21   reservation land.  Raising a number of alternative arguments, the Tribe argued (1) that its

22   retailers bore the legal incidence of the tax, (2) the tax arose out of an on-reservation

23   transaction, and (3) even if the tax arose off-reservation, it was still subject to the preemption

24   _____

25        [1] It now appears, for the first time, that the State may be arguing that distributors bear the
     legal incidence of the Washington State motor vehicle fuel tax.  As discussed in the November
     22 Order, this Court continues to be vexed by the inability or unwillingness of the State to
26   identify the specific entity or individuals that the State believes bears the legal incidence of the
     motor vehicle fuel tax.  Order at 11.

1   balancing test.  Thus, before reaching the central issue, the Supreme Court was first

2   compelled to answer two preliminary questions: Who bears the legal incidence of the tax?

3   Where does the taxable event occur?  Id. at 682.  Only the first preliminary question relates

4   to this Court's analysis regarding the legal incidence of Washington State's motor vehicle

5   fuel tax.

6          The Supreme Court's analysis of the legal incidence issue is relatively brief.  Id. at

7   682-83 (Section II.A of the majority opinion).  Looking to the Kansas fuel tax statute as

8   written and applied, the Supreme Court found the following factors dispositive: (1) Kansas

9   law makes clear that distributors are liable to pay the tax; (2) distributors were entitled to

10  pass the tax on to downstream purchasers, but were not required to do so; and (3) the Kansas

11  Department of Revenue concluded that the legal incidence of the tax falls on distributors.  Id.

12  The Supreme Court also took note that the Tribe had previously failed to dispute this issue,

13  citing the original district court order, which stated that the district court placed the legal

14  incidence on distributors because "'[i]t is *undisputed* that the legal incidence of the tax is

15  directed off-reservation at the fuel distributors.'"  Id. at 681-682  (quoting 241 F.Supp.2d

16  1295, 1311 (2003)) (emphasis added).  Given the brevity of the analysis of the legal

17  incidence issue in Prairie Band, it appears the issue was not seriously disputed in the

18  Supreme Court as well.

19         Unfortunately, the State confuses the legal incidence portion of the Supreme Court's

20  opinion with the other, more closely contested issues (i.e., whether the tax transaction

21  occurred off-reservation and whether an off-reservation transaction forecloses a preemption

22  claim), which were not present in this case.[2]  For example, the State first suggests that

23  "[u]nder the Supreme Court's analysis in Potawatomi, the inquiry into who bears the legal

24  incidence of the tax begins with a determination of what is the 'taxable event.'"  State's Br.

25  ───────────────────

26         [2] In fact, none of the State's arguments are related to the central issue before the Prairie
    Band Court and, as discussed below, several of the arguments have no relationship to the
    Supreme Court's analysis in that case.

ORDER   5–

1  at 4.  The State is incorrect.  The Supreme Court undertook the "taxable event" analysis only

2  *after* determining that distributors bear the legal incidence of the Kansas fuel tax.  Prairie

3  Band, 126 S. Ct. at 683-86 (Section II.B of the majority opinion).  Thus, the State's

4  discussion of, and reliance on, the "taxable event" being the removal of the fuel from a

5  supplier's terminal rack in Washington State is misplaced.

6         The State also contends that the Supreme Court rejected looking to the availability of

7  refunds or deductions as a factor in the legal incidence analysis.  State's Br. at 11.  This

8  reasoning also stems from the State's confusion as to the issues before the Prairie Band

9  Court.  In Section II.B of Prairie Band, the Supreme Court concluded that the availability of

10  certain deductions for distributors did not shift the *taxable event* on-reservation.  See 126 S.

11  Ct. at 685.  The Prairie Band Court's discussion of tax deductions was separate from, and

12  irrelevant to, the legal incidence analysis.  Thus, the references to tax deductions in Prairie

13  Band were clearly not directed at overruling the earlier analysis in Chickasaw Nation, where

14  the Supreme Court specifically held that the availability of refunds indicates that an entity

15  may be a mere transmittal agent of a tax.  See 515 U.S. at 461-62.

16         B.  Whether Distributors Must Pass the Motor Vehicle Fuel Tax to Retailers

17         The State also provides several pages of argument suggesting that the Court erred in

18  concluding that the Washington State motor vehicle fuel tax operates in a manner that

19  requires the tax to pass from distributor to retailer.  State's Br. at 5-9.[3]  As the Court stated in

20  the November 22 Order, several aspects of the Washington State motor vehicle fuel tax

21  statutes and regulations suggest that retailers are legally bound to pay the tax, while

22  consumers are not.  Order, docket no. 129, at 12.  The Court took note that distributors must

23

24        [3] The State's argument on this point is not based on new analysis provided by the
    Supreme Court in Prairie Band.  The State prefaces its argument by stating that "[t]he Supreme
25  Court noted in Potawatomi that although under Kansas law distributors are 'entitled' to collect
    the tax from retailers, they are not required to do so."  State's Br. at 5.  Other than the fact that
26  the Supreme Court considered this factor in the legal incidence analysis, just as it had in
    Chickasaw Nation and the Ninth Circuit had in Hammond, there is nothing in Prairie Band to
    support new or additional argument.

ORDER   6–

1    indicate if fuel sold is untaxed (WAC § 308-72-865(2)(j)), retailers are required to maintain

2    records of taxes paid for two years (RCW 82.36.160), and non-licensees (those other than

3    suppliers and distributors) who acquire untaxed fuel must pay the tax (RCW 82.36.100).

4    The State now contends that these provisions do not, in operation, require distributors to pass

5    the fuel tax on to retailers.

6         First, the State maintains that RCW 82.36.100, which requires non-licensees who

7    acquire fuel to pay the motor vehicle fuel tax, does not allow for retailers to acquire untaxed

8    fuel.  This, of course, is exactly the point: retailers *must* pay the tax but are not legally

9    required to pass the tax on to the consumer.  Just as the <u>Hammond</u> Court concluded, the "tax

10   buck" stops at the retail level.  384 F.3d at 687-88.  The State apparently misunderstands the

11   legal incidence analysis in this regard.

12        Second, the State notes that "nothing in WAC 308-72-865...requires fuel tax to be

13   passed on to retailers."  Therefore, the State reasons, the Court erred by looking to WAC

14   308-72-865 in concluding that Washington State requires the motor vehicle fuel tax to pass

15   from distributor to retailer.  While the State is obviously correct that WAC 308-72-865 does

16   not require the tax to pass from distributor to retailer, the State misunderstands the Court's

17   reliance on that provision.  By requiring distributors to indicate whether fuel sales are taxed

18   or untaxed, the State is able to regulate such sales and ensure compliance.  Under <u>Chickasaw</u>

19   <u>Nation</u> and <u>Hammond</u>, the question at the heart of the legal incidence analysis is whether the

20   State both legally requires and enforces the imposition of a tax on a particular entity or

21   person—hence the Supreme Court's emphasis on examining the State's tax "as written and

22   applied."  515 U.S. at 461.  The November 22 Order merely relied on WAC 308-72-865 in

23   determining that the State is able to enforce the tax against retailers while the same cannot be

24   said of consumers.  Order at 12.

25        Finally, the State argues that the Court erred in looking to RCW 82.36.160, which

26   requires retailers to keep records of motor vehicle fuel taxes paid for two years.  Again, the

1    Court relied on RCW 82.36.160 only to contrast retailers with consumers, who need not

2    keep records of fuel taxes, which indicates that the "tax buck" stops at the retail level.  Id.

3                    C.  Regulation of Retailers in Kansas and Washington State

4          The State's final argument suggests that Kansas "regulates" retailers far more than

5    Washington State.  The State's discussion on this point is unclear in that it does not speak to

6    the legal incidence analysis.  The State cites nothing in either Prairie Band or the earlier

7    Chickasaw Nation and Hammond cases that aids in explaining how this Court might have

8    erred in the November 22 Order even if Kansas regulates retailers to a greater degree than

9    Washington State.

10                  D.  State's Arguments Do Not Require Alteration of the Judgment

11         The State provides no basis for altering the judgment or reconsidering the November

12   22 Order granting summary judgment in favor of the Tribes.  As with the summary judgment

13   motion, the State continues in its failure to identify which entity in the supply chain bears the

14   legal incidence.  At this point, it appears the State has abandoned any argument that the

15   consumer bears the legal incidence of the Washington State motor vehicle tax and would

16   now place it on suppliers, distributors, or both.  However, none of the State's arguments,

17   including those based on the Prairie Band decision, support that conclusion under the factors

18   articulated and applied in Chickasaw Nation and Hammond.  Accordingly, the State's motion

19   for reconsideration is DENIED as to the merits.

20   **CONCLUSION**

21         The State's Motion for Reconsideration and Stay of the Judgment, docket no. 135, is

22   DENIED as untimely and meritless.  Based on the delay in ruling on this motion, the State is

23   allowed 30 additional days to comply with the Judgment and Permanent Injunction, docket

24   no. 134.

25

26

ORDER   8–

1    IT IS SO ORDERED.

2    DATED this 3rd day of February, 2006.

3

4                                              Thomas S. Zilly
                                               United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER   9–