1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

SQUAXIN ISLAND TRIBE, ISLAND
ENTERPRISES INC., SWINOMISH
INDIAN TRIBAL COMMUNITY, and
SWINOMISH DEVELOPMENT
AUTHORITY,

Plaintiffs,

v.

FRED STEPHENS, Director, Washington
State Department of Licensing,

Defendant.

No.  C03-3951Z

ORDER

17

18

19

20

21

22

23

24

25

26

On December 30, 2005, the Court entered a Minute Order informing the parties that a
judgment and permanent injunction would be issued as to the Washington State motor
vehicle excise tax, RCW 82.36.  Docket no. 133.  The Court further directed the parties to
file simultaneous briefs regarding two issues: (1) whether Plaintiffs' Second Amended
Complaint, docket no. 68, stated a claim relating to the Washington State special fuel tax
under RCW 82.38; and (2) whether the Court's Order on Summary Judgment, docket no.
129, should extend to the special fuel tax.  Id.  Having received supplemental briefs from
both the Tribes and the State, docket nos. 136 and 140, the Court enters the following Order
regarding the special fuel tax issues identified in the December 30 Minute Order.

ORDER   1–

1    **Discussion**

2    **1.  Whether Plaintiffs' Second Amended Complaint States a Claim as to the Special Fuel Tax**

3

4    The State originally raised the argument that the Second Amended Complaint failed to

5    state a claim that the legal incidence of the special fuel taxes, RCW 82.38, fell on Tribal

6    retailers.  Docket no. 131 at ¶ 1.  The State now acknowledges that "the complaint addresses

     as background the application of both chapter 82.36, the motor vehicle fuel tax statute, and

7    chapter 82.38, the special fuel tax statute" and concedes that "[i]n the entire context of the

8    complaint, Count I adequately put the state on notice that the Tribes were seeking relief with

9    regard to chapter 82.38 RCW. . . ."  Docket no. 140 at 2.  The question of whether the

10   Second Amended Complaint states a claim as to special fuel taxes is no longer in dispute.

11   **2.  Whether the Order on Summary Judgment Applies to Special Fuels Under RCW 82.38**

12

13   The State appears to raise two separate arguments regarding the application of the

14   Court's November 22 Order on Summary Judgment ("Order") to the special fuel tax.  First,

15   the State contends that the Court's Order is inapplicable to the special fuel taxes in their

16   entirety based on distinctions between the motor vehicle fuel tax and the special fuel tax

17   statutory schemes, as well as two arguments based on Wagnon v. Prairie Band Potawatomi

18   Nation, 126 S. Ct. 676 (2005).  Second, the State raises a narrower argument by focusing on

19   what it identifies as a sub-category of untaxed special fuels known as "dyed diesel."  The

20   State contends that the legal incidence of this sub-category of the tax falls on consumers

21   because the special fuel tax statutes provide mechanisms for the State to enforce the tax

22   against consumers, unlike the motor vehicle fuel tax analyzed in the Order.

23   **A.  Application of the Order to All Special Fuels**

24   The State contends that the Court should not enter a judgment and injunction as to the

25   special fuel tax because (1) the special fuel tax need not pass from distributor to retailer, (2)

26   the availability of refunds are irrelevant, and (3) the "taxable event" occurs when suppliers

ORDER   2–

1   sell special fuel to distributors.  This Court previously addressed the latter two arguments in

2   the Order denying the State's motion for reconsideration and found them meritless.  See

3   docket no. 143 at 4-6 (State's "taxable event" and availability of refunds arguments based on

4   mistaken reading of Prairie Band).  Thus, the only unaddressed argument raised by the State

5   is the extent, if any, to which the special fuel tax scheme differs from the motor vehicle fuel

6   tax in requiring distributors to pass the tax to retailers.

7        In the Order, the Court concluded that the following factors placed the legal incidence

8   of the motor vehicle fuel tax on retailers: (1) the tax is effectively required to pass from

9   distributor to retailer but not from retailer to consumer; (2) refunds for uncollectible taxes are

10  available to suppliers and distributors but not to retailers; and (3) there is no actual liability

11  for, or enforcement against, consumers.  As to the general application of the special fuel tax,

12  the State raises a new objection *only* to the first factor.[1]  In the Order, the Court analyzed the

13  question of whether the motor vehicle fuel tax scheme required the tax to move downstream

14  to retailers but not to consumers as follows:

15        Under the tax statutes at issue in both Chickasaw Nation and Hammond,
          distributors were required by law to collect the taxes from retailers and remit them
16        to the State, but retailers were not legally required to collect the taxes from
          consumers.  Also, the Hammond Court noted that "all invoices for sales by
17        distributors to retailers must show that the state fuel tax was charged to the
          retailer."  384 F.3d at 686.  Here, Washington State's tax system is similar to
18        Idaho's in a number of respects. First, Washington Administrative Code § 308-
          72-865(2)(j) requires distributors to indicate whether or not the fuel tax has been
19        paid on invoices sent to retailers.  Second, retailers in Washington State are
          required to maintain records of taxes paid for two years, which have been audited
20        by the State in the past. RCW 82.36.160; Albright Decl. at 12 (Beach Dep. at 36).
          Finally, RCW 82.36.100 requires every person who acquires motor vehicle fuel
21        to pay the fuel tax if the tax has not yet been paid.  This requirement applies to
          both retailers and consumers, but the practical effect is that only retailers can be
22        audited for compliance because consumers need not maintain records of taxes
          paid.  As it operates, the statutory scheme requires that fuel taxes be passed from
23        distributor to retailer but not from retailer to consumer.  Just as in Hammond, this
          factor indicates that the "tax buck" stops at the retail level.

24

25

26        [1] The State argues that the third factor is also distinguishable but only to the dyed diesel
      category of special fuels, which is discussed in the following section.

ORDER   3−

1   Order at 12 (footnotes omitted).

2       In short, the Court relied on three aspects of the motor vehicle tax statutes in

3   concluding that the tax must pass from distributor to retailer: (1) WAC § 308-72-865(2)(j)

4   requires distributors to indicate whether or not the fuel tax has been paid; (2) RCW

5   82.36.160 requires retailers to maintain records of taxes paid for 2 years; and (3) RCW

6   82.36.100 requires the payment of the fuel tax if not yet paid.  The Court also took note that

7   there were no provisions that effectively required the tax to pass from retailer to consumer.

8   While the State appears to concede that there is a comparable code provision to WAC § 308-

9   72-865(2)(j), the State argues that there are not comparable provisions to RCW 82.36.160

10  and RCW 82.36.100 in the special fuel tax statutes.[2]

11      First, the State contends that there is no special fuel tax statute comparable to RCW

12  82.36.160, which states that "[e]very dealer purchasing motor vehicle fuel taxable under this

13  chapter for the purpose of resale, shall maintain...*for a period of two years* a record of motor

14  vehicle fuels received, *the amount of tax paid to the licensee as part of the purchase*

15  *price*...and such other records as the director shall require."  (Emphasis added).  There is no

16  identical provision in the special fuel tax statutes.  However, RCW 82.38.140(1) requires

17  that "[e]very licensee and every person...dealing in special fuel in this state shall keep for a

18  period of not less than five years" records showing the following:

19      (a) The date of each receipt;
        (b) The name and address of the person from whom purchased or received;
20      (c) The number of gallons received at each place of business or place of storage in
            the state of Washington;
21      (d) The date of each sale or delivery;
        (e) The number of gallons sold, delivered, or used for taxable purposes;
22      (f) The number of gallons sold, delivered or used for any purpose not subject to the
            tax imposed in this chapter;
23      (g) The name, address, and special fuel license number of the purchaser if the
            special fuel tax is not collected on the sale or delivery;
24      (h) The inventories of special fuel on hand at each place of business at the end of
            each month.

25

26      [2] As the Tribes correctly point out, WAC § 308-77-099(2)(k) contains a provision relating
    to the special fuel tax that is identical to WAC § 308-72-865(2)(j).

    ORDER   4–

1    Although RCW 82.38.140(1)(a)-(h) does not specifically require that retailers keep

2  records of taxes paid, the requirement that retailers keep records such as the date of receipt,

3  number of gallons received, and number of gallons received for taxable and non-taxable

4  purposes, indicate that retailers may be audited.  The ability to audit was one aspect of the

5  motor vehicle fuel tax statutes that led the Court to conclude that retailers bear the legal

6  incidence of the tax.  Thus, while not identical, RCW 82.38.140(1) is similar to RCW

7  82.36.160.

8      The State suggests that RCW 82.38.140(1)(g) distinguishes the special fuel tax from

9  the motor vehicle fuel tax because it requires retailers to maintain a record of the "name,

10  address, and special fuel license number of the purchaser if the fuel tax is not collected on

11  the sale or delivery."  This provision, the State reasons, weighs in favor of placing the legal

12  incidence on consumers because there are records of those consumers who purchase special

13  fuel without taxation.  However, the State's argument is flawed.  As the State notes, RCW

14  82.38.140(1)(g) applies to sales of dyed diesel, which is the only fuel that requires

15  purchasers to be licensed and is sold untaxed.  See Def.'s Supp. Br., docket no. 14, at 5, ll.

16  16-18.  See also RCW 82.38.065 (purchaser must hold dyed special fuel license to operate

17  vehicle using dyed special fuel unless the use is exempt).  As a result, the requirement that

18  purchaser information be retained will apply only to a narrow class of special fuels, not to

19  every sale.  Second, as with the motor vehicle fuel tax, there is no statutory requirement that

20  purchasers of special fuel other than dyed diesel receive or keep records of taxes paid.

21  Again, the practical effect of the statutory scheme is that retailers may be audited while

22  consumers may (with the exception of dyed diesel) not.

23    Second, the State contends that there is no special fuel tax provision similar to RCW

24  82.36.100, which provides that "[e]very person other than a licensee who acquires any motor

25  vehicle fuel within this state upon which payment of tax is required...shall, if the tax has not

26  been paid...pay [the motor vehicle excise tax]."  The Tribes point to RCW 82.38.030(7)(d),

ORDER   5–

1  which states that the tax is imposed when "[s]pecial fuel is sold or removed in this state to an

2  unlicensed entity unless there was a prior taxable removal, entry, or sale of special fuel."

3  Although the provisions are not identical, both RCW 82.36.100 and 82.38.030(7)(d) require

4  the payment of the tax by retailers if the tax has not yet been collected.

5       The State is correct that there are differences between the special fuel tax scheme and

6  the motor vehicle fuel tax scheme.  However, those differences are relatively minor.  Under

7  both statutory schemes, there is sufficient information and authority for the State to enforce

8  the tax against retailers, but the same cannot be said of consumers with the exception of dyed

9  diesel.  Moreover, the other factors considered by the Court in the Order continue to weigh

10  in favor of concluding that the legal incidence of the special fuel tax falls on retailers rather

11  than suppliers, distributors, or consumers.

12                      **B.  Application of the Order to Dyed Diesel**

13       The State also argues that the provisions specifically applicable to purchasers of dyed

14  diesel are distinguishable from the motor vehicle fuel tax.  For example, consumers of dyed

15  diesel must apply for a license, and the fuel itself is dyed red so that the State may engage in

16  street-level enforcement of the requirement that the fuel may only be used off-road unless

17  exempted.  See RCW 82.38.030(f)-(g) (tax imposed when dyed special fuel is used on

18  highway or in violation of chapter 82.38); RCW 82.38.065 (licensing requirement for

19  consumers); RCW 82.38.066 (dye requirements for special fuel include notice stating

20  "DYED DIESEL FUEL, NONTAXABLE USE ONLY, PENALTY FOR TAXABLE USE");

21  RCW 82.38.140(g) (retailer must keep record of name, address, and license number of

22  purchaser).  See also Albright Decl., docket no. 137, at 35-36 (Beach Dep.) (Washington

23  State Patrol conducts tests throughout the state on diesel vehicles to check for illegal use of

24  dyed diesel).

25       The Tribes do not dispute that there are extensive audit and enforcement provisions

26  for dyed diesel that reach consumers.  Instead, the Tribes argue that those provisions do not

ORDER  6–

1   alter the analysis in this case because (1) dyed diesel is not a "special fuel" under RCW

2   82.38; (2) sales of dyed diesel are a very small percentage of diesel sales as a whole; and (3)

3   the Tribes' retail stations do not sell dyed diesel, so the issue is irrelevant.

4        First, the Tribes refer to RCW 82.38.020(23), which defines "special fuel" as "all

5   combustible gases and liquids suitable for the generation of power for propulsion of motor

6   vehicles" except that it does not "include dyed special fuel as defined by federal

7   regulations." The Tribes also note that the State's 30(b)(6) deponent stated that "[d]yed

8   diesel is not considered special fuel unless it is used in an unlawful manner." Because of the

9   limited definition of dyed diesel as a special fuel, the Tribes argue that it cannot alter the

10  legal incidence analysis of the special fuel tax as it applies to taxed diesel. Second, the

11  Tribes provide a DOL summary of fuel sales for the months of September 2001 and 2002.

12  Albright Decl. at 14. The summary indicates that there were sales of approximately 46

13  million gallons of special fuel in both September 2001 and 2002, yet the amount of dyed

14  diesel sales in each month was only 936,617 gallons (2.04%) and 455,562 gallons (.98%),

15  respectively. Id. Thus, the Tribes contend, the dyed diesel sales averaging 1-2 percent of the

16  total special fuel sales do not alter the greater legal incidence analysis. Finally, the Tribes

17  state that they "do not sell dyed diesel and do not seek any relief with respect to dyed

18  diesel." See Murray Decl., docket no. 138, at ¶ 2; Johnson Decl., docket no. 139, at ¶¶ 2-4.

19       The State is clearly correct that the legal incidence analysis of dyed diesel sales is not

20  analogous to the motor vehicle fuel tax discussed in the Order. The audit and enforcement

21  provisions are very different and do, as the State contends, reach consumers. However, the

22  Tribes are similarly correct that dyed diesel sales are minor and distinct from the vast

23  majority of taxed special fuel sales that are at issue in this litigation. Moreover, when used

24  as intended, dyed diesel is *untaxed*, meaning the question of who bears the legal incidence *of*

25  *the tax* is generally irrelevant. Finally, the Court concludes that the dyed diesel analysis is

26

ORDER 7–

1    not at issue in this case because the Tribes provide uncontroverted declarations that they

2    have not and do not engage in the purchase or sale of dyed diesel.

3    **Conclusion**

4         The State's argument that the Court's analysis in the November 22 Order does not

5    apply to special fuels is not well taken.  The only unaddressed issue is whether RCW 82.38

6    effectively requires the special fuel tax to pass from distributor to retailer but not from

7    retailer to consumer.  While not identical, the statutory provisions are similar.  Additionally,

8    while the dyed diesel provisions do impose consumer liability, those provisions do not alter

9    the analysis of the special fuel tax as a whole and are not at issue in this litigation.  The

10    Tribes' motion for judgment and permanent injunction as to the special fuel tax, docket no.

11    130, is GRANTED.

12         The Clerk is directed to enter an Amended Judgment and Permanent Injunction

13    pursuant to this Order enjoining the State of Washington from imposing or collecting motor

14    vehicle or special fuel taxes, or otherwise seeking to enforce RCW chapter 82.36 or RCW

15    chapter 82.38 with respect to motor vehicle fuels, special fuels, and fuel products delivered

16    to, received by, or sold by Plaintiffs' retail fuel stations within their respective Indian

17    Country, with the exception of dyed diesel.

18         IT IS SO ORDERED.

19         DATED this 2nd day of March, 2006.

20

21                           _Thomas S. Zilly_

22                           Thomas S. Zilly
                               United States District Judge

23

24

25

26

ORDER   8–